UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
DR. SHAMSUDDIN A. ABDUL-HAKIM BEY,

                            Plaintiff,                      12 Civ. 5875 (PAE)

                        -v-                                OPINION & ORDER

DIRECTOR STACIA HYLTON; U.S. MARSHAL
JOSEPH R. GUCCIONE; U.S. MARSHALS JOHN DOES
#1-3; and GRENADIER REALTY CORPORATION,

                            Defendants.
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

      Plaintiff Shamsuddin A. Abdul-Hakim Bey ("Bey") alleges here that three U.S. Marshals unlawfully searched and seized him at gunpoint in the mailroom of his apartment building. He sues these three U.S. Marshals, whom he has not identified by name, as "John Doe" defendants. He also sues Stacia Hylton ("Hylton"), the Director of the U.S. Marshals Service; Joseph R. Guccione ("Guccione"), the then-U.S. Marshal for the Southern District of New York; and Grenadier Realty Corporation ("Grenadier"), which manages his apartment building. The defendants move to dismiss. For the reasons that follow, that motion is granted as to Hylton, Guccione, and Grenadier Realty Corporation and denied, for the time being, as to the John Doe Marshals.

I. Background

   A. The Alleged Unlawful Search and Seizure[1]

On March 14, 2012, between 11:15 a.m. and 12:06 p.m., three U.S. Marshals, with guns drawn, approached Bey in the mail area of his apartment building at 1600 Sedgwick Avenue in the Bronx. FAC ¶ 28; *id.* at 13;[2] SAC at 7.[3] The Marshals pointed their guns at his head. SAC at 7. One Marshal ordered Bey to lay face down on the ground. FAC ¶ 29; *see also* SAC at 7. When Bey did so, two Marshals searched him while another trained his gun on Bey's head. FAC ¶ 30; SAC at 7. They searched under Bey's shirt and in his pants pocket, but found only business cards. FAC ¶ 30; SAC at 7. After the Marshals told Bey to stand up, he asked them what probable cause they had to search and seize him. SAC at 7; FAC ¶ 31. The Marshals told Bey that his wallet had looked like a gun to them. SAC at 7; *but see* FAC ¶ 32 (the Marshals

---

[1] For the purpose of resolving the motion to dismiss, the Court treats the *pro se* plaintiff's Complaint, First Amended Complaint ("FAC"), and Second Amended Complaint ("SAC") as a single operative complaint, and assumes all facts pled in them to be true, drawing all reasonable inferences in the plaintiff's favor. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). To the extent the allegations are inconsistent, the Court treats the allegations in the more recent pleadings as controlling. The only differences between the Complaint and the FAC are that the FAC omits certain material appended to the end of the Complaint, including pages with additional details about the alleged unlawful search and seizure, *see* Compl. at pp. 13–15, and adds a final paragraph noting that *pro se* litigants are held to less stringent pleading standards. The SAC incorporates the prior pleadings. SAC at 8 ("Please – consider this argument with the originals I have already filed."). Commendably, the Government "attempt[ed] to address the allegations contained in both the FAC and the SAC" so as to "afford Plaintiff a liberal interpretation of his pleadings." Gov. Br. 3 n.3 (citing *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d. Cir. 2006)).

[2] After page 12, both the Complaint and the FAC cease to use numbered paragraphs or page numbers. Accordingly, the Court cites to the portions of those documents after page 12 by page number, starting at page 13.

[3] The Court cites the SAC according to the ECF page numbers in order to avoid inconsistent pagination.

"ignored . . . Bey's question."). Bey told the officers that he did not consent to the search and seizure that had just occurred. FAC ¶ 32. The officers then refused to identify themselves—save one, who identified himself as Officer Pena, *see* Compl. at 13— hid their shields, and left. FAC ¶ 32. According to Bey, the officers at the time had "no basis to formulate a reasonable, articulate suspicion that [he] had engaged in or was about to engage in criminal conduct." *Id.* ¶ 29. Multiple witnesses were present. Compl. at 13.

Afterwards, Bey was "hospitalized for mental trauma," which he also reported to mental health professionals. SAC at 7. He continues to "suffer[] . . . states of paranoia, delusions, hatred bitterly over these things, cannot sleep very well, [and] cannot eat properly because [he is] afraid of going in [his] kitchen by [his] apartment's front door." *Id.* at 8. He feels "imprisoned in my own apartment." *Id.*

### B. The Original Complaint

On July 30, 2012, Bey filed a Complaint. Dkt. 2. The Complaint named as defendants Hylton, in her individual and official capacity as Director of the U.S. Marshals Service; Guccione, in his individual and official capacity as United States Marshal for the Southern District of New York; Raymond W. Kelly ("Kelly"), in his individual and official capacity as New York City Police Commissioner; Michael Bloomberg ("Bloomberg"), in his individual and official capacity as Mayor of New York City; the City of New York itself; and U.S. Marshals John Does 1 through 3, in their individual capacities. The Complaint alleged that defendants violated Bey's rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and committed torts under New York State law. Compl. ¶¶ 1; 25–28. It further alleged that Hylton, Gucccione, Kelly, Bloomberg, and the City had created a policy or practice of unconstitutional stop and frisk searches, and that Hylton, Kelly, Bloomberg, and the City had

failed to screen, train, monitor, and discipline officers of the United States Marshals Service (USMS) and New York Police Department (NYPD).  The Complaint also sought to link Bey's case to pending litigation against the City relating to its "stop and frisk" policies.  *Id.* ¶¶ 2–6.

On September 4, 2012, the Court issued an Order directing the Clerk of Court to issue a summons as to defendants Hylton and Guccione.  Dkt. 6.  That Order also dismissed Bey's claims against defendants Kelly, Bloomberg, and the City of New York, for failure to allege their personal involvement in the alleged unlawful search and seizure, which Bey alleged had been conducted by U.S. Marshals, not NYPD officers.[4]  *See* Dkt. 6 at 3.  The Court also ruled that Bey had failed to provide sufficient information to enable the United States Marshals Service to identify the John Doe defendants, and therefore declined to order the United States Attorney to ascertain their identities and service addresses.  *Id.* at 3 n.2.

### C. The Amended Complaint

On October 9, 2012, Bey filed the FAC, *see* Dkt. 7, which was identical to his original Complaint, save that it did not include certain appended material, and added a final paragraph noting that *pro se* litigants are held to less stringent pleading standards, *see id.* at 12.  The Court

---

[4] *See* Compl. ¶ 21 and FAC ¶ 21 (referring to "John Doe" defendants as "officers, employees and agents of the USMS," albeit "the USMS of the City"); Compl. ¶¶ 28–33 and FAC ¶¶ 28–33 (describing the incident and referring to the officers as U.S. Marshals); SAC at 7 (same).  To be sure, the Complaint includes allegations that suggest that the officers who searched and seized Bey may have been NYPD officers, not U.S. Marshals.  *See* Compl. at 13 (the "alleged U.S. Marshals [said] they were from the Bronx, New York 44th Pct. Special Tactical Task Force Unit"); *id.* (one officer identified himself as Officer Pena); *id.* at 14 (recounting Bey's efforts to file a report with the 44th and 46th Police Precincts).  Because Bey has sued individual U.S. Marshals (as John Does), and not individual NYPD officers, and because his Complaint mostly refers to the officers as U.S. Marshals, the Court assumes, for the purposes of resolving this motion to dismiss, that the allegedly offending officers were U.S. Marshals.  Consistent with this, the Court notes that, "[d]espite a mistaken statement to the contrary contained in a July 23, 2012 letter from the USMS to Plaintiff, *see* SAC at 27, the federal defendants (Hylton and Guccione) do not dispute that USMS employees were present at Plaintiff's apartment building on March 14, 2012."  Gov. Br. 10 n.8.

construed this filing as a request to reconsider its September 4 Order, and denied Bey's request for reconsideration.  *See* Dkt. 8.

### D.  The Second Amended Complaint

On December 26, 2012, Bey filed a motion requesting leave to file the SAC, which he attached as an exhibit to his motion.  Dkt. 12.  On February 26, 2013, the Court issued an order accepting Bey's proposed SAC for filing.  Dkt. 14 at 2.

The SAC incorporates Bey's previous filings by reference.  SAC at 8.  It also added Grenadier as a defendant.  *Id.* at 7, 20–21.  The SAC alleges that Grenadier, as Bey's landlord, was responsible for the search and seizure at issue because of its failure to keep the apartment building free from continued criminal activity, thereby creating the need for visits by law enforcement.  The SAC also includes statements and documents describing the NYPD's "stop and frisk" policy, *id.* at 13, 15–19, and identifying Bey as a "Moorish American National Citizen" or "Sovereign Aboriginal Moorish American Citizen;" *id.* at 12, 29–34, 52.  Finally, the SAC states that Bey was unable to provide sufficient identifying information about the Marshals because they were undercover.  It states that he should not be prejudiced by his resulting inability to identify them.  *Id.* at 12–13; *see also id.* at 15, 35–42, 44–51 (documents about undercover law enforcement).

In its February 26, 2013 order accepting the SAC, the Court dismissed the SAC as to defendants Kelly, Bloomberg, and the City of New York, because the SAC, like the original Complaint, failed to allege that those defendants had any direct or indirect involvement in the alleged unlawful stop and search of Bey on March 14, 2012.  Dkt. 14 at 2.  The Court also held that the SAC, like its predecessors, failed to provide sufficient information to identify the John

Doe defendants; the Court again declined to order the United States Attorney for the Southern District of New York to ascertain the identities and service addresses of those defendants. *Id.*

### E. Bey's Motion for Default Judgment

On February 22, 2013, Bey filed a motion for a default judgment against Hylton, Guccione, Kelly, Bloomberg, the City of New York, and Grenadier Realty Corporation. Dkt. 13. In its February 26, 2013 order, the Court denied that motion. Dkt. 14 at 2–3. As for Hylton and Guccione, to properly serve an officer or employee of the United States sued in either an official or an individual capacity, plaintiff must also serve the United States, *see* Fed. R. Civ. P. 4(i), but there was (and today remains) no indication that Bey had done so, Dkt. 14 at 2–3. As for Kelly, Bloomberg, and the City of New York, the Court had already dismissed these defendants. *Id.* As for Grenadier, it had not been named as a defendant in Bey's original Complaint. Although Bey appeared to have served some version of the complaint on Grenadier on December 21, 2012, *see* Dkt. 12-2 at 17, Grenadier had not yet been named as a defendant at that time, and the Court had not yet authorize plaintiff to file the SAC. *See* Dkt. 14 at 3.

### F. Bey's Initial Motion for Recusal

On March 12, 2013, Bey moved to disqualify this Court from this case, requesting that it be "decided by another judge and even a higher court if possible." Dkt. 17. On March 15, 2013, the Court denied Bey's motion, which did not recite a factual basis for disqualification. Dkt. 18.

### G. Motions to Dismiss

On July 11, 2013, Grenadier filed a motion to dismiss, Dkt. 27 (originally filed as Dkt. 23), and supporting papers, *see* Dkt. 28 ("Grenadier Br."), Dkt. 29 ("Branch Decl."). Grenadier identifies itself as the apartment building's managing agent, not its owner. Grenadier Br. 1. It

argues that Bey's constitutional claims cannot apply against it, as a private entity, *id.* at 4–5, and that Bey fails to allege facts that would establish a claim against it, *id.* at 5–6.

On July 12, 2013, Hylton and Guccione filed a motion to dismiss, Dkt. 30, and supporting papers, *see* Dkt. 31 ("Gov. Br."), Dkt. 32 ("Auerbach Decl."). They argue that Bey failed to properly serve them, Gov. Br. 5–6; that his *Bivens* claim for damages against them in their official capacity is barred by sovereign immunity, *id.* at 7–8; that Bey's *Bivens* claim against them in their individual capacity fails to state a claim, *id. at* 8–13; and that, to the extent Bey's pleadings can be read to make out an FTCA claim, such a claim is barred against them in their individual capacities because they were acting within the scope of their employment and against the United States for lack of exhaustion, *id.* at 14–15.

On August 21, 2013, Bey filed an Affirmation in Opposition to Motion, Dkt. 38, which the Court construes as both a motion to disqualify this Court, *see id.* at 1 ("Plaintiff would like to request a complete redo of case with another Judge"), and a notice of opposition to defendants' motions to dismiss, *see id.* ("Plaintiff would like to request . . . to hold all parties to stop dismissals."). Also on August 21, 2013, Bey filed an "Affidavit of Jurisdiction," which the Court construes as Bey's opposition to the motion to dismiss, *see* Dkt. 39 ("Bey Br."), and a motion for leave to amend to add as defendants Kelly, Bloomberg, the City of New York, and this Judge, *see id.* at 2 (listing, *inter alia*, New York City Police Commissioner Raymond W. Kelly, Mayor Michael Bloomberg, The City of New York, and District Judge Paul [A.] Engelmayer as defendants). On September 4, 2013, Grenadier informed the Court that it would rely on its previously submitted motion to dismiss. Dkt. 41. On September 10, 2013, Hylton and Guccione did the same. Dkt. 42 at 1.

## II. Bey's Second Motion for Recusal and Attempt to Add Defendants

The Court first resolves Bey's second motion to disqualify the Court from hearing this matter. Dkt. 38. Bey's motion does not state a reason why recusal is required. It is denied.

Bey also seeks to add this Judge as a defendant. Dkt. 39. But Bey has not sought nor received leave to file a Third Amended Complaint, nor alleged facts supporting a claim against this Judge. His attempt to add the Court as a defendant is therefore denied. Bey's attempt to add this Judge as a defendant does not require recusal. "[A] judge is not disqualified merely because a litigant sues or threatens to sue him. Such an easy method for obtaining disqualification should not be encouraged or allowed." *United States v. Nagy*, 19 F. Supp. 2d 139, 140 (S.D.N.Y. 1998), *aff'd* 2002 U.S. App. LEXIS 10693 (2d Cir. 2002), *cert. denied*, 537 U.S. 922 (2002) (citations omitted).

The Court also denies Bey leave to add the city defendants, Bloomberg, Kelly, and the City of New York itself, whom the Court has twice dismissed. As before, Bey's pleadings fail to allege these defendants' personal involvement in the alleged unlawful search and seizure, which Bey alleges was conducted by U.S. Marshals, not NYPD officers. *See* Dkt. 6 at 3; Dkt. 14 at 2.

## III. Applicable Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed, where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. Accordingly, a district court

must accept as true all well-pleaded factual allegations in the complaint, and draw all inferences in the plaintiff's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). However, that tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. A pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## IV.  Discussion

### A.  Grenadier

Bey argues that Grenadier is liable for the Marshals' allegedly unlawful search and seizure of him because Grenadier failed to combat crime in his apartment building, therefore creating the conditions that led law enforcement to come to the building. SAC at 7, 20–21. This allegation does not come close to stating a claim, because, as a matter of law, "however true, [it] could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. Bey does not cite, and the Court is unaware of, any authority to the effect that a landlord is liable for independent investigative actions taken by law enforcement in his or her building.

Bey fails to adequately plead the tort of malicious prosecution, in which a private person induces law enforcement to prosecute another individual. Bey does not allege that he was prosecuted, and even if he had been, he has failed to plead facts to make Grenadier liable. *See Richards v. Gasparino*, 374 F. App'x 135, 137 (2d Cir. 2010) ("where a person has undertaken no more than to provide potentially incriminating information to a public officer, made a full and truthful disclosure, and has left the decision to prosecute entirely in the hands of the public officer, he cannot be held liable for malicious prosecution") (citations omitted).

Bey's claims against Grenadier are therefore dismissed, with prejudice.

### B. Hylton and Guccione

Bey's allegations against Hylton and Guccione also fail. Bey's pleadings do not allege a single fact to support the conclusion that either official was, as required to sustain a *Bivens* claim, "personally involved in the constitutional violation." *Thomas v. Ashcroft*, 470 F.3d 491, 496 (2d Cir. 2006); *see Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). His only allegations against them consist of conclusory statements about policies supporting "stop and frisk" searches and failures to train, monitor, and supervise marshals. FAC ¶¶ 2, 4. The bare allegation that a defendant is the "principal architect" of an invidious policy is inadequate, as it is "nothing more than a formulaic recitation of the elements" of a constitutional claim. *Iqbal*, 556 U.S. at 680–81.

To the extent Bey's pleadings can be read to raise a claim under the Federal Tort Claims Act (FTCA), they fare no better. The FTCA provides that "a suit against the United States is the exclusive remedy for a suit for damages for injury 'resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment.'" *Hightower v. United States*, 205 F. Supp. 2d 146, 153–54 (S.D.N.Y. 2002) (quoting 28 U.S.C. § 2679(b)(1)). Here, the FTCA applies because government has certified that Hylton and Guccione were acting within the scope of their employment. Gov. Br. 15. Thus, the United States must be substituted as a defendant in place of Hylton and Guccione. 28 U.S.C. § 2679(d)(1). And any FTCA claims against the United States must be dismissed, because Bey does not plead that he has filed an administrative claim with the U.S. Marshals Service, and the FTCA's limited waiver of sovereign immunity only applies if the claimaint has "first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." *Id.* § 2675(a). To the extent Bey's

pleadings raise a claim under the FTCA, they must, therefore, be dismissed for lack of subject matter jurisdiction.

### C. The "John Doe" U.S. Marshals

Bey's allegations against the John Doe U.S. Marshals, however, plainly state a Fourth Amendment claim. Bey alleges that he was seized at gunpoint and searched. The Court further construes Bey to allege that the Marshals lacked an articulable reason for these actions, and to factually challenge as untrue the Marshals' statement to him that his wallet had looked to them like a gun. Taking these statements as true, as the Court must at the motion to dismiss stage, Bey has clearly pled that his Fourth Amendment rights were violated. The Government does not argue otherwise. Indeed, it is not even clear if the Government moves to dismiss the case as to the three John Doe U.S. Marshals.

Under *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997), a *pro se* litigant is entitled to assistance from the district court in identifying an unidentified defendant. *Id.* at 76. The Court previously declined to issue a *Valentin* Order, on the grounds that Bey had not provided sufficient information to permit the United States Marshals Service to identify the John Doe defendants. Dkt. 6 at 3 n.2; Dkt. 14 at 2.

However, given the Government's acknowledgment that U.S. Marshals were present at Bey's apartment building on the date of the alleged search and seizure, Gov. Br. 10 n.8., the Court has reconsidered its prior ruling. Bey has supplied the location, date, and time of the alleged events; and the United States Marshals service found this data sufficient to ascertain that their personnel were present at the building that day. It therefore appears that the United States Marshals Service may be in a position to identify the John Doe defendants. The Court therefore orders the United States Attorney for the Southern District of New York, as the attorney for and

agent of the U.S. Marshals Service, to ascertain the identity of the John Doe defendants and the addresses where they may be served. Once the United States Attorney has done so, the Court will issue an order amending the complaint to name these defendants. The Court will thereupon give an opportunity to the then-identified individual Marshals to move to dismiss, should they believe a colorable basis exists for such a motion.

### D. Service

Federal Rule of Civil Procedure 4(m) requires that a plaintiff serve a defendant "within 120 days after the complaint is filed." That time has elapsed, and Bey has not properly completed service in the manner required by Federal Rule of Procedure 4(i). *See* Gov. Br. 5–6. To serve an employee of the United States, a plaintiff must serve both the employee and the United States. Fed. R. Civ. P. 4(i). To serve the United States, a plaintiff must serve both the Attorney General, which Bey has done, *see* Gov. Br. 6, and the United States Attorney for the district where the action is brought, here, the Southern District of New York, which Bey has not done.

This issue is moot as to Guccione and Hylton, as this Order grants their motion to dismiss on the merits. But it remains relevant as to the three John Doe Marshals. Although Bey has been unable to serve them personally, because he does not yet know their names or identities, that did not prevent him from serving the United States as required by Federal Rule of Procedure 4(i).

Federal Rule of Civil Procedure 4(m) provides that "if the plaintiff shows good cause for the failure [to timely serve a defendant], the court must extend the time for service for an appropriate period." "'Good cause' typically exists 'only in exceptional circumstances where the failure to serve process in a timely manner results from circumstances beyond the plaintiff's

control.'"  *Cobalt Multifamily Investors I, LLC v. Arden*, No. 06 Civ. 6172 (KMW) (MHD), 2013 WL 5780810, at *2 (S.D.N.Y. Oct. 24, 2013) (quoting *Howard v. Klynveld Peat Marwick Goerdeler,* 977 F.Supp. 654, 658 (S.D.N.Y. 1997), *aff'd,* 173 F.3d 844 (2d Cir. 1999)); *accord Songhorian v. Lee*, No. 11 Civ. 36 (CM), 2012 WL 6043283, at *3 (S.D.N.Y. Dec. 3, 2012); *Eastern Refractories Co., Inc. v. Forty Eight Insulations, Inc.*, 187 F.R.D. 503, 505 (S.D.N.Y. 1999).  Here, no circumstances beyond Bey's control appear to explain his failure to timely and fully serve the United States; thus, there appears to be no good cause.

However, the absence of good cause does not compel dismissal: "district courts have discretion to grant extensions even in the absence of good cause."  *Zapata v. City of New York,* 502 F.3d 192, 196 (2d Cir. 2007); *see also id.* at 193 ("We join several other circuits and hold that district courts may exercise their discretion to grant extensions under Rule 4(m) absent a showing of good cause under certain circumstances."); *Cobalt*, 2013 WL 5780810, at *1 ("In the absence of good cause, the court may either 'dismiss the action without prejudice' or, in its discretion, 'order that service be made within a specified time.'") (quoting Fed. R. Civ. P. 4(m)); *Ligon v. City of New York,* No. 12 Civ. 2274 (SAS), 2013 WL 3502127, at *2 (S.D.N.Y. July 12, 2013) (granting a discretionary extension of time for service, "[d]espite the absence of good cause").  "[N]o criteria for this decision are supplied in the rule itself; this silence commits extensions in the *absence* of good cause, like determinations on the *presence* of good cause, to the sound discretion of the district court."  *Zapata*, 502 F.3d at 197 (emphases in original). "When deciding whether to exercise discretion and extend the time for service of process, courts consider: '(1) whether the applicable statute of limitations would bar [a] refiled action; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant had attempted to conceal the defect in service; and (4) whether the defendant would be

13

prejudiced by the granting of plaintiff s request for relief from the provision.'" *Songhorian*, 2012 WL 6043283, at *4 (quoting *Eastern Refractories*, 187 F.R.D. at 505).

The Court decides to exercise its discretion and extend the time for service of process. It is true that the applicable statute of limitations would not bar a refiled action. "The statute of limitations for *Bivens* actions arising in New York is three years," *Rudaj v. Treanor*, 522 F. App'x 76, 77 (2d Cir. 2013), and the date of the search and seizure at issue is March 14, 2012. And it is also true that the United States did not attempt to conceal the defect in service. But the United States has had long actual notice of the claims asserted; as the Government has forthrightly and commendably admitted, the United States Attorney's Office for the Southern District of New York, the entity that was not properly served, "has been aware of this matter since late 2012." Gov. Br. 6. And the defendant John Doe Marshals are not in any way prejudiced by the Court's decision to extend Bey's time to serve their employer, the United States: The United States has been aware of the suit since at least late 2012, and no deadlines have begun to run against them. The equities therefore weigh strongly in favor of granting Bey an extension. It appears that Bey, a *pro se* plaintiff proceeding *in forma pauperis*, acted in good faith and attempted to comply with the law's sometimes confusing rules regarding service of process.[5]

---

[5] While the Court cannot tell from the record before it, it is possible that Bey's failure to serve the United States cannot fairly be attributed to him. As a *pro se* plaintiff proceeding *in forma pauperis*, Bey is entitled to use the U.S. Marshals Service to effect service. 28 U.S.C. § 1915(d). Through the Marshals, Bey served the Amended Complaint on all defendants then named, though apparently not on the United States. Dkt. 9. Also through the Marshals, Bey served the SAC on some, but not all defendants then named. Dkt. 19–20. It is not clear whether Bey's failure to serve the United States can fairly be attributed to him rather than the administrative process of the Court or the Marshals. However, because the Court decides to exercise its discretion to extend his time to serve the SAC, the Court need not definitely resolve whether Bey failed to serve the United States Attorney for the Southern District of New York because of exceptional circumstances beyond his control.

## CONCLUSION

Grenadier's motion to dismiss is granted. The government's motion to dismiss is granted as to defendants Hylton and Guccione. The Clerk of Court is directed to terminate the motions pending at Dkt. 27 and 30.

The dismissal of these defendants leaves the three John Doe U.S. Marshals, who are alleged to have committed the search and seizure at issue, as the sole remaining defendants. The Court directs the United States Attorney for the Southern District of New York to ascertain promptly their identities and the addresses where they may be served. By January 16, 2014, the United States is directed to communicate this information to Bey, using appropriate means of service, and to place an affidavit of such service on the docket of this case. The Court will then issue an order amending the SAC to reflect the names of these defendants. At that time, unless the Government indicates that it is unnecessary for the Court to do so, the Court will direct the Clerk of Court to mail five USM-285 forms to Bey, so that he can fill them out and return them to the Court, thereby allowing the Marshals to serve the individual defendants and the United States.

SO ORDERED.

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: December 16, 2013
       New York, New York