UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
DR. SHAMSUDDIN A. ABDUL-HAKIM BEY, :        12 Civ. 5875 (JCF)
                                   :
            Plaintiff,             :        MEMORANDUM
                                   :        AND  ORDER
    - against -                    :
                                   :
CHIEF ANTHONY IAQUINTO, SENIOR     :
INSPECTOR ANDREW PRZEDPELSKI,      :
SPECIAL DEPUTY U.S. MARSHAL LOU    :
PENA, and JONATHAN REID,           :
                                   :
            Defendants.            :
- - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

    The plaintiff, Dr. Shamsuddin A. Abdul-Hakim Bey, brings this
action pursuant to Bivens v. Six Unknown Named Agents of Federal
Bureau of Narcotics, 403 U.S. 388 (1970), against the defendants,
Chief  Anthony  Iaquinto,  Senior  Inspector  Andrew  Przedpelski,
Special Deputy U.S. Marshal Lou Pena, and Jonathan Reid, based on
an encounter in the lobby of his apartment building on March 14,
2012.  The plaintiff alleges that the defendants unlawfully stopped
and searched him at gunpoint in violation of his Fourth Amendment
rights.  The defendants now move for summary judgment under Rule 56
of the Federal Rules of Civil Procedure, on the grounds that they
had  reasonable  suspicion  to  search  the  plaintiff,  or  in  the
alternative, that they are entitled to qualified immunity.  For the
reasons that follow, the defendants' motion is denied.

Background

    A.   Incident on March 14, 2012[1]

On March 14, 2012, the defendants were participating in an operation conducted by the U.S. Marshals Service's New York

---

[1] Dr. Bey has submitted a statement in response to the defendants' statement of material undisputed facts, as required by Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Civil Rules"), see infra at 11-13. Dr. Bey's submission consists of handwritten annotations on the defendants' Rule 56.1 statement, and does not clearly respond to each asserted fact. (Plaintiff's Statement of Material Undisputed Facts ("Pl. 56.1"), attached as part of Statement of Material Disputed Facts and Answer for Motion to Deny the Summary Judgment (Doc. No. 101) ("Pl. Statement") and as part of Exh. 1 to Pl. Statement). In opposing the defendants' motion, the plaintiff has also submitted a copy of the defendants' memorandum of law supporting the instant motion with handwritten annotations contesting many of the arguments (One Chief Exhibit for Trial ("Pl. Opp. Memo."), attached as part of Exh. 1, and Exhs. 2 & 3 to Pl. Statement); a notarized affidavit that attaches incident reports written by the building's security guard, a diagram, a description of the incident, and notes on the defendants' sworn declarations (Doc. No. 99) (Affidavit and Motion to Deny Summary Judgment ("Bey Aff.")); and a notarized statement of facts (Doc. No. 102).

Because Dr. Bey is proceeding pro se, I have reviewed the record and also taken into consideration the unsworn statements in his opposition papers on the assumption that he would have testified to these statements, which are substantially similar to or overlap with those in his notarized submissions. See, e.g. Geldzahler v. New York Medical College, 746 F. Supp. 2d 618, 620 n.1 (S.D.N.Y. 2010). My independent review of the record revealed evidence that contradicts some of the facts asserted in the defendants' Local Civil Rule 56.1 Statement. Therefore, the facts recited below are culled from the defendants' statement, the plaintiff's submissions, and the record.

Regional Task Force (the "Task Force") to apprehend an individual located at 1600 Sedgwick Avenue in the Bronx. (Defendants' Statement of Material Undisputed Facts ("Def. 56.1"), ¶ 1). Chief Iaquinto and Senior Inspector Przedpelski are employees of the U.S. Marshals Service; and Mr. Reid, an employee of the New York County District Attorney's Office, was serving as a member of the Task Force, as was Special Deputy Pena, an employee of the New York City Police Department. (Def. 56.1, ¶¶ 2-6). After the operation had concluded, Chief Iaquinto and Senior Inspector Przedpelski entered an elevator on an upper floor of the building to return to the lobby. (Def. 56.1, ¶ 7). They contend that after they had descended one or two floors, the plaintiff got onto the elevator with them, giving them the opportunity to observe him at close range. (Def. 56.1, ¶ 9). Chief Iaquinto and Senior Inspector Przedpelski assert that they noticed Dr. Bey turn his body away from them, put his hands in the pockets of his sweatpants and move them around, and repeatedly adjust his pants, which appeared to be sliding down. (Def. 56.1, ¶¶ 10-15). Chief Iaquinto also asserts that he observed "a bulge" and "something brown" in the plaintiff's pocket. (Def. 56.1, ¶ 17). Based on these observations, these defendants state that they formed the impression that Dr. Bey was attempting to conceal something (Def. 56.1, ¶¶ 13-14), and suspected that he might have a gun in his pocket (Def. 56.1, ¶ 17).

3

Dr. Bey acknowledges that there were two men in the elevator he took to the lobby that day. (Excerpts of Deposition of Dr. Shamsuddin A. Abdul-Hakim Bey dated Oct. 30, 2014 ("Bey Dep. 1"), attached as Exh. A to Declaration of Andrew E. Krause dated Dec. 30, 2014 ("Krause Decl."), at 92). However, he denies that he turned his body away from the other occupants of the elevator (Bey Dep. 1 at 97) or that he adjusted his pants (Excerpts of Deposition of Dr. Shamsuddin A. Abdul-Hakim Bey dated Oct. 30, 2014 ("Bey Dep. 2"), attached as Exh. A to Supplemental Declaration of Andrew E. Krause dated March 27, 2015 ("Krause Supp. Decl."), at 98-99).

Upon reaching the ground floor, Chief Iaquinto and Senior Inspector Przedpelski assert that they exited the elevator, as did the plaintiff, and went outside to meet Special Deputy Pena and Mr. Reid. (Def. 56.1, ¶¶ 19-20). The defendants state that they continued to observe Dr. Bey through the glass doors of the lobby, that he was facing outside and looking at the defendants, and that he continued to adjust something in his pants. (Def. 56.1, ¶¶ 21, 23-24). During this interaction, the defendants contend that Chief Iaquinto communicated to the others his belief that the plaintiff had a gun in his pants. (Def. 56.1, ¶ 22). They state that they then re-entered the building, approached Dr. Bey in a "nonaggressive manner," informed him that they were police

4

officers, and instructed him to get on the ground.  (Def. 56.1, ¶¶ 25-26).  The plaintiff complied, following which the defendants conducted a search of his pockets, which yielded only a large number of papers and business cards and a wallet.  (Def. 56.1, ¶¶ 26-28).

Dr. Bey concedes that he had hundreds of business cards and a wallet in his pockets, and that he complied with the officers' directive to get on the ground.  (Bey Dep. 1 at 88-89; Bey Aff. at 7, 12).  However, he disputes the other facts asserted by the defendants.  The plaintiff contends that when he reached the lobby, he saw three U.S. Marhsals with their guns drawn, who rushed towards him within two to three seconds of his exiting the elevator.  (Bey Dep. 1 at 100-01).  He describes one of them as Special Deputy Pena, whose name he came to know later, one as being Caucasian, and the third as having a dark complexion.  (Bey Dep. 1 at 101-02).  The plaintiff clearly states that the stop and subsequent search occurred "immediately," a mere "instant" after he reached the lobby.  (Bey Aff. at 5, 10, 12, 14; Pl. Opp. Memo. at 4, 5, 10, 13, 14).[2]  Dr. Bey also maintains that the defendants had

---

[2] For the sake of clarity, I will refer to the pages in the plaintiff's submissions opposing the motion for summary judgment as numbered by the Case Management/Electronic Case Filing (CM/ECF) system, with the exception of his Memorandum of Law, for which I utilize the original page numbers.

their guns pointed at him for the duration of the search and seizure.  (Bey Dep. 1 at 101; Bey Aff. at 7, 12, 16).  In contrast, Jose Suarez, a former security officer for 1600 Sedgwick Avenue who was also in the lobby during the encounter, testified that none of the officers had their guns drawn during their interaction with the plaintiff.  (Memorandum of Law of Defendants Anthony Iaquinto, Andrew Przedpelski, Lou Pena, and Jonathan Reid in Support of Their Motion for Summary Judgment ("Def. Memo.") at 5; Excerpts of Deposition of Jose O. Suarez dated Nov. 13, 2014 ("Suarez Dep. 1"), attached as Exh. B to Krause Decl., at 36).

   Mr. Suarez testified that, prior to the investigatory stop at issue, he observed Dr. Bey standing in the lobby, facing the elevators with his back to the door leading outside.  (Suarez Dep. 1 at 33-34; Incident Report dated March 14, 2012 ("Incident Report"), attached as Exh. C to Krause Decl., at 1).  He had no knowledge as to how the plaintiff arrived in the lobby, or whether there were other people riding in the elevator with Dr. Bey prior to the incident.  (Excerpts of Deposition of Jose O. Suarez dated Nov. 13, 2014 ("Suarez Dep. 2"), attached as Exh. B to Krause Supp. Decl., at 75; Suarez Dep. 1 at 33).  The incident report written by Mr. Suarez on the day of the encounter recounted that Dr. Bey "was awaiting the elevator in lobby area when U.S. Marshals scram [sic] out for [the plaintiff] to drop to the ground."  (Incident Report

6

at 1).  However, Mr. Suarez testified that when he first noticed Dr. Bey, "he was already with" the law enforcement officers; additionally, he also stated that he in fact observed four officers walking up to Dr. Bey.  (Suarez Dep. 1 at 34-35).  Approximately fifteen minutes before the incident occurred, Mr. Suarez saw all four of the involved officers "waiting around" in the lobby of the building.  (Suarez Dep. 1 at 40).  Although Mr. Suarez recalled being only a "few feet" from the parties during their encounter and being able to see clearly (Suarez Dep. 1 at 39), he also explained that his location prevented him from hearing the conversation between the parties (Suarez Dep. 1 at 41-42).

Following the search, the defendants told the plaintiff that they had perceived the wallet in his pocket to be a gun.  (Def 56.1, ¶ 30; Bey Aff. at 7).  Dr. Bey asked them for their names and badge numbers; only Special Deputy Pena responded by providing his last name.  (Def. 56.1, ¶31; Bey Aff at 8-9; Incident Report at 2).

B.   Procedural History

Dr. Bey commenced the instant action on July 30, 2012, naming as defendants Stacia Hylton, Director of the U.S. Marshals Service, former U.S. Marshal Joseph R. Guccione, former New York City Police Commissioner Ray Kelly, former Mayor Michael Bloomberg, the City of New York, and three John Doe U.S. Marshals.  In September 2012, the Honorable Paul A. Engelmayer, U.S.D.J., dismissed Commissioner

7

Kelly, Mayor Bloomberg, and the City of New York as defendants due to the plaintiff's failure to allege that they had direct or indirect involvement in the underlying incident.  (Order dated Sept. 4, 2012 at 3).  The plaintiff filed an amended complaint, and with leave filed a second amended complaint on February 27, 2013, adding Grenadier Realty Corporation as a defendant.  (Second Amended Complaint).  Judge Engelmayer then granted the defendants' motion to dismiss as to Grenadier Realty, Marshal Guccione, and Director Hylton, and ordered the government to ascertain the identities of the three remaining John Doe defendants and communicate this information to the plaintiff.  (Opinion & Order dated Dec. 16, 2013 at 15).  On February 6, 2014, Judge Engelmayer ordered that the operative complaint be amended to replace the John Does with the four individuals identified by the government, namely Chief Iaquinto, Senior Inspector Przedpelski, Special Deputy Pena, and Mr. Reid.  (Order dated Feb. 6, 2014 at 2).  Subsequently, both parties consented to my jurisdiction for all purposes pursuant to 28 U.S.C. § 636(c).  (Consent to Jurisdiction dated July 31, 2014).

Discussion

    A.   Summary Judgment

        1.   Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, a court will grant summary judgment if "the movant shows there is no

8

genuine issue of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986); Marvel Characters, Inc. v. Simon, 310 F.3d 280, 285-286 (2d Cir. 2002). The moving party bears the initial burden of identifying "the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The opposing party then must cite specific parts of the record, such as depositions, documents, affidavits or declarations, and admissions, to demonstrate the existence of a genuine issue for trial. Fed. R. Civ. P. 56(c); see also Celotex, 477 U.S. at 324. Only facts that could affect the outcome of the suit under the governing substantive law are deemed "material." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 69 (2d Cir. 2001). Additionally, the court's review of the record is limited to facts that would be admissible at trial. See Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997). Where the non-moving party fails to make "a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment must be granted. Celotex, 477 U.S. at 322.

In assessing the record to determine whether there is a genuine issue of material fact for trial, the court must view all

facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."); accord Holcomb v. Iona College, 521 F.3d 130, 132 (2d Cir. 2008). Nonetheless, the court must inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," and may grant summary judgment where the non-movant's evidence is "merely colorable" or not significantly probative. Anderson, 477 U.S. at 249-50 (internal citations omitted). In opposing a motion for summary judgment, a party "may not rely on mere speculation or conjecture as to the true nature of the facts", as "conclusory allegations or denials cannot by themselves create a genuine issue of material fact where . . . none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (alteration in original) (internal quotation marks omitted); see also Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); Podell v. Citicorp Diners Club, Inc., 112 F.3d 98, 101 (2d Cir. 1997) (non-movant "must bring forward some affirmative indication that his version of relevant events is not fanciful" (internal quotation marks omitted)). However, "[a]ssessments of credibility and choices between

10

conflicting versions of the events are matters for the jury, not for the court on summary judgment." Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005) (internal quotation marks omitted).

In the instant case, I am mindful that Dr. Bey is a pro se litigant whose submissions must be construed to "raise the strongest arguments that they suggest." Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks omitted). Nevertheless, this liberality "does not relieve [the] plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." Jorgensen v. Epic/Sony Records, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation marks omitted).

### 2.   Local Civil Rule 56.1

The Local Civil Rules require a party moving for summary judgment to annex to its motion a "separate, short and concise statement, in numbered paragraphs, of the material facts as to which [it] contends there is no genuine issue to be tried." Local Civil Rule 56.1(a). The party opposing summary judgment must submit, along with its opposition, a statement responding to each of the proposed undisputed facts. Local Civil Rule 56.1(b). Each numbered paragraph in the moving party's Rule 56.1 statement will be deemed admitted unless controverted by the non-movant's

corresponding statement.  Local Civil Rule 56.1(c).

District courts, however, have "broad discretion to determine whether to overlook a party's failure to comply with local court rules." Holtz, 258 F.3d at 73.  Even where the non-moving party has received notice pursuant to Local Civil Rule 56.2 regarding the requirements for opposing summary judgment, a court may "conduct an assiduous review of the record to determine if there is any evidentiary support for [the non-movant's] assertions of fact that do not cite to evidence and to determine if there are any other material issues of fact." Geldzahler, 746 F. Supp. 2d at 620 n.1 (internal quotation marks omitted).

Where the court's independent review of the record yields evidence contrary to an assertion in the movant's Rule 56.1 statement, the court may reject that assertion. Holtz, 258 F.3d at 73-74.  Conversely, where the movant's statement of undisputed facts is not contradicted by the court's review or by the non-movant, the party's assertions will be "deemed admitted" for the purposes of the summary judgment motion. Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003); accord Chitoiu v. UNUM Provident Corp., No. 05 Civ. 8119, 2007 WL 1988406, at *1 n.1 (S.D.N.Y. July 6, 2007) (granting summary judgment against pro se plaintiff who failed to respond to defendant's Rule 56.1 statement of facts).

12

Here, the defendants have complied with the requirements of Local Civil Rule 56.1, including providing the plaintiff with the requisite notice regarding how to oppose a motion for summary judgment. As mentioned above, see supra n.1, Dr. Bey's opposition is at times difficult to decipher and does not consistently follow the specifications of Local Civil Rule 56.1. Nonetheless, because Dr. Bey is a pro se litigant, and because he does not rely solely on his pleadings in opposing the defendants' motion, I have "assiduously reviewed" the record and determined that there is some evidentiary support for a number of the plaintiff's assertions.

B.   Unlawful Search and Seizure

The defendants argue that their stop and frisk of the plaintiff was proper as it was based on their reasonable suspicion, arising out of their observations, that Dr. Bey was in possession of a weapon. (Def. Memo. at 12-13).

The Supreme Court has held that "the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." United States v. Solokow, 490 U.S. 1, 7 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 27 (1968)). The Fourth Amendment "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and

seizures," U.S. Const. amend IV, is not infringed where police officers, having identified themselves as law enforcement, undertake a limited search based on their objectively reasonable belief that a person presents a safety concern. Terry, 392 U.S. at 27-29. Thus, to legally proceed from a stop to a frisk, a police officer must "reasonably suspect that the person stopped is armed and dangerous." Arizona v. Johnson, 555 U.S. 323, 326-27 (2009).

The Fourth Amendment requires, however, that an officer "articulate something more than an inchoate and unparticularized suspicion or hunch" in justifying a Terry stop. Solokow, 490 U.S. at 7 (internal quotation marks omitted). In other words, there must be "'some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity.'" United States v. Muhammad, 463 F.3d 115, 121 (2d Cir. 2006) (quoting United States v. Cortez, 449 U.S. 411, 417 (1981)). In determining whether an officer had reasonable suspicion at the time of the investigative stop, courts must look at the "totality of the circumstances" that gave rise to the stop. Muhammad, 463 F.3d at 121. However, "only 'the facts available to the officer at the moment of the seizure'" may be evaluated. Id. (quoting Terry, 392 U.S. at 21-22). Although the standard for reasonable suspicion is an objective one, Muhammad, 463 F.3d at 121, officers are permitted to "draw on their own experience and specialized training to make

14

inferences from and deductions about the cumulative information available to them," United States v. Arvizu, 534 U.S. 266, 273 (2002).

C.   Reasonable Suspicion

The defendants in the instant case point to several facts supporting their assertion that they reasonably suspected Dr. Bey of possessing a weapon.   According to the defendants, Chief Iaquinto and Special Deputy Pena observed the plaintiff in the elevator angling his body away from them, and putting his hands in his pants pockets and moving them around -- behavior that "suggested he was attempting to conceal something." (Def. Memo. at 12).   Additionally, Dr. Bey's repeated adjustments of his sweatpants, which appeared to be sliding down, and Chief Iaquinto's observations of a bulge and something brown in Dr. Bey's pocket, led Chief Iaquinto to believe that the plaintiff might have a revolver. (Def. Memo. at 12).

At the outset, the plaintiff disputes doing anything to invite suspicion while in the elevator, with the exception of having full pockets and possibly having his hands in his pockets. (Bey Dep. 1 at 97-98; Bey Dep. 2 at 99).   Furthermore, Dr. Bey's account of the timeline of events undermines the defendants' claim that they had a sufficient opportunity to form reasonable suspicion before stopping the plaintiff.   The plaintiff asserts that three men

15

approached him from the direction of the lobby instantly -- less than three seconds -- after he exited the elevator. (Bey Dep. 1 at 100-01; Bey Aff. at 5, 10, 12, 14; Pl. Opp. Memo at 4, 5, 10, 13, 14).

The defendants argue, in a footnote, that Dr. Bey's assertion regarding the timing of the incident is "entirely implausible" because it is directly contradicted by the defendants and Mr. Suarez, is inconsistent with the plaintiff's testimony about being in the elevator with Chief Iaquinto and Senior Inspector Przedpelski, and "improbably suggests that Defendants approached and detained Plaintiff without ever having seen him before." (Def. Memo. at 13 n.3). The plaintiff's assertion that the stop occurred immediately after he exited the elevator does indeed suggest that the defendants stopped him before they had observed him and formed reasonable suspicion about his possession of a gun; however, this is not an inherently "improbable" claim. At summary judgment, the fact that all four of the defendants challenge Dr. Bey's account of the timing of the stop cannot be considered proof that they are correct and he is in error; instead, the defendants' argument indicates the existence of a genuine issue of material fact that precludes summary judgment. As for inconsistencies in Dr. Bey's testimony, my review of the record reveals that he has only specifically acknowledged riding in the elevator with two Caucasian

men, but does not concede that they were the same individuals who
stopped and searched him. (Bey Dep. 1 at 92-93; Bey Dep. 2 at 99-
100; Pl. Opp. Memo. at 3). In regard to Mr. Suarez's testimony,
some portions of it support the plaintiff's version of the facts
and others support the defendants' version; more to the point, his
testimony is not particularly illuminating, suffering as it does
from internal inconsistencies that confuse the order of events and
the location of the parties prior to the incident.[3]

    "[I]t is undoubtedly the duty of district courts not to weigh
the credibility of the parties at the summary judgment stage,"
except in the rare circumstance that the moving party demonstrates
that "there is no evidence in the record upon which a reasonable
factfinder could base a verdict in the plaintiff's favor."
Jeffreys, 426 F.3d at 554. Here, we do not have merely a "bald
assertion" by the plaintiff that is "completely unsupported by
evidence." Geldzahler, 746 F. Supp. 2d at 620 n.1 (internal

---

    [3] At his deposition, Mr. Suarez made all of the following
statements: that he did not see the plaintiff arriving in the
lobby; that he did not have any knowledge about the occupants of
the elevator; that fifteen minutes prior to the incident he
observed all four defendants in the lobby; that when he first
noticed Dr. Bey he was already with the defendants, but also that
he saw the plaintiff standing in the lobby facing the elevators
prior to the incident; that he witnessed the defendants approaching
the plaintiff; and that he was too far away to hear the plaintiff
and the defendants, despite describing their conversation in his
incident report. (Suarez Dep. 1 at 33-35, 40-42; Suarez Dep. 2 at
75; Incident Report at 1-2).

quotation marks omitted).  Although Dr. Bey relies almost entirely
on his own testimony, he has been consistent in his allegations
regarding the events leading up to his seizure by the defendants,
and merely claims that the defendants lacked an opportunity to form
reasonable suspicion (regarding his non-existent weapon) before
they forcibly stopped and frisked him.  Cf. Jeffreys, 426 F.3d at
554 (summary judgment appropriate where plaintiff who accused
officers of pushing him out of window had repeatedly confessed to
jumping, could not identify any characteristics of officers who
allegedly attacked him, and relied exclusively on his own
contradictory and incomplete testimony); see also Matheson v.
Kitchen, 515 F. App'x 21, 23 (2d Cir. 2013) (finding district court
exceeded its discretion by disregarding plaintiff's testimony at
summary judgment stage where facts not as "extreme" as in
Jeffreys).  Here, Dr. Bey does not allege facts so incredible that
"no reasonable [person] would undertake the suspension of disbelief
necessary to give credit to the allegations." Jeffreys, 426 F.3d
at 551.

Taking the evidence in the light most favorable to the
plaintiff, I find that the record indicates the existence of a
genuine issue of material fact.  The pertinent question is whether,
accepting the plaintiff's version of the facts, a reasonable jury
could find in his favor on his Fourth Amendment claim.  See Holtz,

18

258 F.3d at 69.  In answering this question, the issue of precisely when the defendants approached the plaintiff in the lobby is relevant to whether the "facts available to [them]" when they seized Dr. Bey provided them with the requisite reasonable suspicion.  Muhammad, 463 F.3d at 121.  For the purposes of adjudicating the defendants' motion for summary judgment, I must assume that a jury would credit Dr. Bey's testimony regarding his conduct while in the elevator and the timing of when the defendants stopped him, and reject all contrary evidence.  See, e.g. Daniel v. T&M Protection Resources LLC, No. 13 Civ. 4384, 2015 WL 728175, at *9 (S.D.N.Y. Feb. 19, 2015).  If the plaintiff's testimony is so credited, the jury could find that his actions in the elevator were insufficient to create reasonable suspicion, or that none of the defendants were even in the elevator with Dr. Bey and thus had no objective basis for stopping him at all.[4]  Accordingly, Dr. Bey has presented a genuine issue of material fact and it would be inappropriate to dismiss his claim at this stage.  See Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (noting that probable cause

---

[4] Mr. Suarez's testimony could also support the latter factual finding: he stated in his deposition that he saw the four law enforcement officers involved in the stop "just waiting around" in the lobby a mere fifteen minutes before the encounter.  (Suarez Dep. 1 at 40).  A jury could reasonably believe this testimony and consequently find incredible Chief Iaquinto's and Senior Inspector Przedpelski's claims of being upstairs and descending to the lobby in Dr. Bey's elevator.  (Def. 56.1, ¶¶ 7-9).

may only be determined "as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers").

    D.  <u>Qualified Immunity</u>

    The defendants argue that even if I decline to dismiss the plaintiff's constitutional claim on the merits, they are entitled to summary judgment on the basis of qualified immunity. (Def. Memo. at 16-17).

    Qualified immunity "shields government officials from civil liability for civil damages as a result of their performance of discretionary functions, and serves to protect government officials from the burdens of costly, but insubstantial, lawsuits." <u>Lennon v. Miller</u>, 66 F.3d 416, 420 (2d Cir. 1995) (citing <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 817-18 (1982)). However, government officials are protected only "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow</u>, 457 U.S. at 818; <u>accord</u> <u>Farid v. Ellen</u>, 593 F.3d 233, 244 (2d Cir. 2010). An individual defendant is not entitled to summary judgment on the issue of qualified immunity if the court determines that (1) the demonstrated facts "'make out a violation of a constitutional right'" and (2) the "'right at issue was clearly established at the time of defendant's alleged misconduct.'" <u>Winfield v. Trottier</u>, 710 F.3d 49, 53 (2d Cir. 2013) (quoting <u>Pearson v. Callahan</u>, 555

U.S. 223, 232 (2009).  The reviewing court must view the evidence presented in the light most favorable to the plaintiff.  See Farid, 593 F.3d at 244.  Nevertheless, even where a plaintiff's rights are well-defined, and the boundaries of permissible government conduct clearly established, qualified immunity protects an official "if it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act." Lennon, 66 F.3d at 416 (quoting Anderson v. Creighton, 483 U.S. 635, 641 (1987)); see also Winfield, 710 F.3d at 53.

At the time of the defendants' confrontation with Dr. Bey, it was clearly established that an investigatory stop unsupported by reasonable suspicion of criminal activity would constitute a violation of the plaintiff's Fourth Amendment rights.  See, e.g. Arizona, 555 U.S. at 326 (noting that under Terry, investigatory stops and subsequent searches comport with Fourth Amendment's ban on unreasonable seizures if justified by reasonable suspicion); United States v. Freeman, 735 F.3d 92, 95-96 (2d Cir. 2013); McCardle v. Haddad, 131 F.3d 43, 48 (2d Cir. 1997) (observing that "[i]t is well established that a warrantless search is per se unreasonable under the Fourth Amendment" but that "[a] limited search for weapons, without a warrant and without probable cause, is also permissible in connection with" a Terry stop).

Where an officer asserts qualified immunity as an affirmative

defense to an allegation of an unreasonable stop and search, a court must analyze whether (1) it was objectively reasonable for the officer to believe that reasonable suspicion existed, or (2) officers of reasonable competence could disagree on whether the reasonable suspicion test was met. Sutton v. Duquid, No. 05 CV 1215, 2007 WL 1456222, at *6 (E.D.N.Y. May 16, 2007) (citing Jackson v. Sauls, 206 F.3d 1156, 1166 (11th Cir. 2000).

In the instant case, disputed issues of material fact preclude a finding that the defendants had reasonable suspicion to conduct an investigatory stop of the plaintiff. It is clear that "summary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness." Kerman v. City of New York, 261 F.3d 229, 240 (2d Cir. 2001) (internal quotation marks and brackets omitted); see also Curry v. City of Syracuse, 316 F.3d 324, 334 (2d Cir. 2003) ("Where the circumstances are in dispute . . . a defendant is not entitled to judgment as a matter of law on a defense of qualified immunity." (internal quotation marks omitted)). Here, granting summary judgment on the basis of qualified immunity "is inappropriate because the essential factual circumstances leading up to [the] plaintiff's stop" and search are disputed. Petway v. City of New York, No. 10 CV 1048, 2012 WL 2254246, at *6 (E.D.N.Y. June 14, 2012).

Conclusion

For the reasons stated above, the defendants' motion for summary judgment (Doc. No. 87) is denied.

SO ORDERED.

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          May 26, 2015

Copies mailed this date to:

Dr. Shamsuddin A. Abdul-Hakim Bey
1600 Sedgwick Ave.
Apt. 19-S
Bronx, NY 10453

Andrew E. Krause, Esq.
U.S. Attorney's Office, SDNY
896 Chambers St., 3rd Floor
New York, NY 10007

23